First case today is number 21-1708 and 22-1610, United States v. Nataniel Acevedo-Osorio. At this time, would counsel for the appellant please come to the podium, introduce himself on the record to begin. May I please the court, Jose David Rodriguez on behalf of Mr. Nataniel Acevedo-Osorio, may I reserve two minutes for rebuttal? You may. Thank you. Your honors, nobody bargains away their freedom for an empty promise, yet that is what happened here. The government agreed to make a joint recommendation for a sentence of 120 months, which was the mandatory minimum. It was a major downward variance of 172 months from the low end of the guideline sentence of 292 months to 365 months. Under these circumstances, with such a major variance at stake, what the substitute prosecutor at sentencing did, saying only that the government was recommending 120 month sentence and giving no reasons for the court to downwardly variance, was breached. The holdings of this court are well established that the prosecutor is subject to the most severe technical compliance, it's not enough that the defendant is entitled to the benefit of the bargain and the good faith of the prosecutor. You would agree that this is not the same as what we described in Canada as grudging and apologetic references to the plea agreement, correct? It is not the same as in Canada, yes, it's a different breach. And so the question becomes how little is too little and how much is not enough, which is what you're arguing. So I guess I'm trying to figure out where would you define the line to be as far as what a prosecutor should be expected to do? Well, Your Honors, where the sentence that the government is recommending is a downward variance and especially a downward variance of 14 years, which was what was happening here. The least the prosecutor can do under those circumstances in acting in good faith with the promise is to give reasons for the court to consider varying downward. But if we have to define a rule, what would it be? Well, the rule is that when there is a joint promise, when there is a promise for a joint recommendation to a downward variance, the government must give some reasons to the court for this recommendation because it is well-established law that a downward require a justification for the court to move downward. Are the reasons in the plea agreement alone enough? Is the rationale set out in the plea agreement alone that the government signed and entered into? Is that enough? The plea agreement mentions that the government agrees that 120 months is a fair sentence under the relevant sentencing factors. So we know that the government view the sentencing factors as consistent with this recommendation, yet they never spelled that out. And that's what was missing here. That was what's critical here. Counsel, you have another claim of breach that relates, as I understand it. You take the position that because the government gave to probation as part of its preparation of the pre-sentence report, a lot of investigative details about the government's interaction with the complainant, and a lot of that investigative detail went far beyond what the defendant admitted to through the plea agreement and at the change of plea hearing. Do I understand that you are relying on that as well as a breach of the plea agreement? We are. That's another form of breach that happened here. Okay. Where do you get the basis for that aspect of breach? Because that has nothing to do with the way in which the prosecutor performed at the sentencing. It has to do with how the government was supposed to relate to probation in preparation for sentencing. Where does that notion of breach come from? It comes, Your Honor, from the fact that the government agreed to help Mr. Acevedo get the benefit of this bargain. And the government stipulated that no sentencing enhancements applied in this case. Giving a bunch of documents to probation officers that gave rise to the enhancement that the parties and the government explicitly, expressly left out of the agreement goes against the good faith in helping Mr. Acevedo get the benefit of the bargain. Because in fact, those papers gave rise to the enhancements. So that is our- Counsel, let me, I'll tell you what bothers me about that. It seems to me that you're arguing that ultimately the judge who has to impose the sentence is only going to get a somewhat artificial view of what was going on here, will not have a full sense of all of the conduct between the defendant and the victim. Now, you can argue to the judge that despite all of these circumstances, the sentence should still be X. But the notion that the judge should have an incomplete view of all of the circumstances of this offense, I find that somewhat troubling. How do you justify that? Well, to be clear, Your Honor, these were allegations that were not part of the charges, were not part of the offense conduct, were not part of the government's version of the facts. These were allegations of bad acts that were not relevant to the offense of conviction. But in any event, Your Honor, even if that was not breached by itself, given those documents to the probation officer, at least it emphasizes the need for the government at sentencing to explain why they left. They agreed that no enhancements applied to this case, which has to do with how they view the seriousness of the offense, or at least it's something that the government, the prosecutor could have done at sentencing to try to justify their recommendation. That, it's at minimum, what it should have, it is connected to our main breach point, which is the prosecutor, their recommendation at sentencing. Can I move you to the issue involving the complainant's statements? The government argues that the complainant's statements were reliable and verified by your client's own statements. How do you respond to that? Yes, Your Honor. I see that my time has stopped, so I can respond to this question. The verification that is on the record has to do with the conduct to which Mr. Acevedo pled guilty, the request of pictures from June of 2019 to August of 2019. The other allegations that were included in the pre-sentencing report lack corroboration, to the only exception that Mr. Acevedo admitted that he, at one point, shared a picture with a coworker. But that was only one of at least a dozen other allegations of uncharged misconduct that were included in the PSR without verification and without all the other hallmarks of reliability, and that the court here hastily adopted and included in its sentencing rationale. Okay, so the only true affirmation you see your client giving is as to that one picture? That is correct, Your Honor. The government also mentions that Mr. Acevedo threatened, that Mr. Acevedo admitted that he threatened the complainant and then tried to say, in objection to the PSR, that he did not threaten anybody. I want to be clear about that as well, because that is being taken out of context. Mr. Acevedo, as part of the offense conduct to which he pled guilty, which was requesting these pictures in the summer, and he admitted that he threatened the complainant by saying, if you don't give me more photos, I will disclose them. He admitted to that. But when the government says that Mr. Acevedo is backtracking that admission, that is mentioned out of context. It has to do with an objection that counsel made to an allegation in the report that after the events, complainant's mother had been threatened by somebody and she was requesting money on that basis. And it was in that context that counsel said that there is no evidence of any threats. So he was objecting to a different threat, not the one he admitted to about disseminating pictures. Is that what you're saying? There were allegations of threats that were even part of the charges and related to events that supposedly happened after the relevant events. Thank you. Thank you, counsel. At this time, counsel for the U.S., please introduce yourself on the record if you can. Okay, good morning, Greg Conner for the United States, and may it please the court. The government's asking this court to affirm because there was no breach of the plea agreement and because the district court did not err or abuse its discretion in deeming portions of the record reliable. Acevedo raises some additional claims as well, so there's a lot of ground to cover, and I will address the remainder if I have to. Counsel, let me just say at the outset, so you know in part what you're dealing with, I have never seen a more minimal performance by a prosecutor at a sentencing, defending, if you will, a plea agreement. I mean, this was about as minimal as you can get. All the prosecutor did was acknowledge, yeah, we entered into this agreement. It's just a restatement of the obvious. I mean, if that's enough, then what does this obligation to engage in more than lip service, what does that mean? I mean, this to me was quintessential lip service. Yeah, we entered into this agreement. Okay, a few points. The first is that some of this is going to depend on what's actually in the agreement. In this case, the plea agreement obligated the prosecutor to communicate to the district court that its recommendation was 120 months. That was its obligation. That might seem scant, but that's what the plea agreement says, and you know that there was the potential for more to be in the plea agreement, because this court has cases where there were specific considerations that the prosecutor did have to talk about. So, the problem here is that defense counsel did not bargain in a smart way. If they wanted more from the prosecutor, that more should have been reflected in the agreement itself. Is that what you're saying? That's part of it, Your Honor, and because Acevedo accepts plain error review, this is page 24 of the opening brief, this court's decision in Lessard is instructive on that point. And this court in Lessard was facing nearly identical arguments that the prosecutor had a duty to argue on behalf of or explain its sentence, and this court looked to the terms of the agreement and said, no, the obligation in the plea agreement was to communicate to the district court, this is our recommendation, and obviously not do anything to undermine it. So, you're saying that a defense attorney will have to specifically, specifically extract from the prosecutor an agreement that the prosecutor will explain, not only say what the agreement is, but will explain the reason for such a drastic variance? That's your position? That's part of it. And to break it down. What's the other part? Sorry? Well, okay. A few things. The first is that the lack of objection in this case is relevant, not just for plain error purposes, but because the actual- Can't you see how odd that would be for a defense attorney to say, I object that the prosecutor isn't saying enough? Well, it's not odd at all because the literal attorneys on the agreement were present at the sentencing hearing, and this is not a meek or silent defense attorney. She made arguments throughout the proceedings, so if she didn't think that the prosecutor was meeting her end of the bargain, she surely would have said something. The reality is, this was a well-negotiated agreement on Acevedo's behalf, and to address some concerns from Monday, this court raised concerns about the potential for gamesmanship in this process. The reality is that, one, Acevedo is not actually claiming gamesmanship or trickery, but he got serious benefits from this agreement, including the dismissal of two out of three of the counts. One of those counts was a 15-year mandatory minimum, and yes, this court has specified in the past that it is a benefit to a defendant to have the government with its prestige stand up in court and give a recommendation. So Acevedo's argument is not so much that there was trickery or gamesmanship, it's what I think Judge Lopez put his finger on pretty well, which is the idea that if parties enter into an agreement, and then later the PSR comes out and makes a different guidelines calculation, in this case, a higher guidelines calculation, that that should serve as a signal to the prosecutor that its responsibility has changed, and now includes the obligation to explain that discrepancy. One of my concerns is, if I'm the district court judge, I want to know why the government is entering into the plea agreement, and in many cases, you can tell from the plea agreement, right? It sets out the defendant waived indictment, they pled immediately on the day they were acquitted. I don't think the departure that is suggested in the agreement is necessary. In this agreement, none of that is there. The only thing that is there is 120 months, so from the perspective of the court, and of the roles that the parties play within that agreement, and then within the sentencing, the court has a right to know where the government stands, and often you know that from the plea agreement, or you know it from what the government says during the sentencing hearing, and I think your problem here is, we don't really know what the government's position is, because they didn't advocate for that agreement at either point. Okay, a few things to break down. The first is that the idea that it was, the circumstances can also indicate why the government is doing what it was doing. In this case, there's a sex abuse victim, and it is typical that parties in the district court would not want the victim to be re-victimized. As far as, this is actually more common than circumstances delineating the reasons, but as far as this idea that you have to explain the discrepancy between an agreement and a PSR having different calculations, again, this is plain error review, that would be a brand new rule. Acevedo cannot win on plain error by asking for- Again, Your Honor, I'll refer you to the Lesser case, which says you don't have to give that explanation. Montañez-Quinonez said you're not entitled to the government's thinking once it gives the recommendation. You're not entitled to ruffles, or flourishes, or any degree of enthusiasm. The obligation is to make the recommendation, and what Judge Lopez was getting at, is not only something that can be bargained for, but it's really at the heart of type C versus type B plea bargaining. This is in black and white in the plea agreement in this case. If Acevedo wanted more limitations to be put on the district court, that is something that can be bargained for, but as it stands in this agreement, at page 19 of the appendix, it says in bold capital letters, type B warning. This is an agreement between the parties. It's not binding on the district court, and the agreement specifies the district court is free to disagree with the calculation. As long as the district court is within the statutory limits, that's not a basis for withdrawing the plea. So in other words, not only is Acevedo not saying trickery or gamesmanship, he couldn't because he was explicitly notified that this was possible because it's a type B agreement. That's the nature of those differences. Are you aware of, well, have you personally, or has your office entered into plea agreements that do delineate what the prosecutor will do at sentencing beyond simply confirming that they've entered into this plea agreement? Are there agreements that specify that the prosecution will, as Judge Montecalvo was saying, will explain the basis for entering into the plea agreement, why the government thinks this is an appropriate outcome? Have you seen plea agreements that do that? Judge Lopez, to state it briefly, I'm aware that that was the circumstance on Monday. I don't have intimate familiarity with that case, but my understanding is that typically the obligation spelled out in the agreement is to give the recommendation. As far as I've seen, it's more rare to provide a list of reasons why. So if I can just sum up because, sorry. Sorry, well, this is obviously very important. We may take some extra time with it. This is a case, you indicated, I thought, that there may be situations where there is such a degree of variance, if you will, between what's been agreed upon and what the pre-sentence is describing as the guideline, that that would be a signal that there's a particular burden of justification on the government. That's this case, right? I mean, here there's an agreement on the mandatory minimum, which is way, way below the guideline range. Why isn't this the case where there is a signal that there's going to be some explaining required if the judge is going to buy this agreement? Okay, my point earlier was not that that is an established rule. My point is that I think you accurately described Acevedo's argument, and this is why he's referring to Gaul and duty of explanation cases. But what I was trying to say that that is his argument, but to establish that, he does have to ask this court for a new rule, and Lessard essentially says no. The same situation was present in Lessard, and it's probably the most typical case where this will arise, because it was based on drug amount. The parties agreed to a significantly lower drug amount than was actually at issue. The PSR comes out, and there's about a 15-year delta between the guidelines ranges. So it's a similar situation in this case, and again, this court said no. There is not a duty of advocacy. It looked to the terms of the agreement and said that the prosecutor met its obligation by communicating the recommendation to the district court. And again, as far as the lip service point, there's no indication like there was in Canada, Gonksy, or Clark, that the prosecutor backtracked or did anything to undermine this agreement. So as much as the agreement is short, it's all that was necessary under the particular circumstances of this case. And if that's, if you, if there aren't any other questions, I'll address the factual reliability. Can I, can I actually interrupt, because you're actually, you're over time, but I wanted to ask you two quick questions. One about the, the, the fine imposed, the indigent, indigency issue with the fine. Do you agree that that special assessment can only be applied to non-indigent people? Yes, I believe that's the statutory phrasing. And then where in the record do you see a finding of indigency, or that the defendant here could pay that fine? What the district court determined in agreement with the probation officer is that when Acevedo made a filing the night before the sentencing hearing, and the probation officer said, I reviewed it, we don't have enough information to determine indigency, the district court said, okay, I'm going to deny the objection for now, but I'm going to revisit it, and put the onus on Acevedo to give the district court more information. So it, it. What do you mean revisit? I thought that the district court said at some point in the future, some point in the next 20 years maybe, if the defendant feels that that fine should not have been imposed because of his income status, then he can ask to be relieved of the burden. I don't, I didn't get the sense that the judge was saying, you can come back in a few days when, and we'll reconsider this. It was not very open for the indefinite future. Isn't that what the judge did? Sometime in the future, indefinite future, if you think I, if you feel you, you should not have been required to pay this fine, then come back to court and maybe you can get relief. Isn't that what happened? I, more or less, I, the district court gave Acevedo the opportunity to provide more information to contest his, his indigency. It didn't provide a specific. But his financials had already been reviewed, at least due to his eligibility for the services of the federal public defender, but there was already a finding that he couldn't afford an attorney. And what else did the district court need? Some of the, I believe, Seventh Circuit, some of the out-of-circuit cases we had in our brief said that the focus is more long-term. The district court should consider the financial, or the ability to find employment in the long-term and the ability to pay after release. So basically. None of which the court did. Say again? None of which the court did. Well, I agree. And the reason the district court gave is the probation officer said, I just got a motion last night. I reviewed it, but I don't think I have enough information to determine that. So it, I, I think Acevedo could, for example, say, if you look at averages, it's more difficult for people convicted of sex crimes to find certain levels of employment. So he will have difficulty paying $5,000. But there was nothing other than saying, I'm convicted of this offense, I'm going to have trouble finding employment, and I have a public defender. And the probation officer said that wasn't enough information to make the determination. It briefly, I know that I'm over time, but we did focus on the breach claim. I, I think this court should look to the Santiago-Colón case for determining the reliability of the victim's statements. Briefly, Santiago-Colón gave two reasons that the district court, quote, easily could have determined the victim's account was reliable. Those reasons were that the probation officer explained they came from reports of investigation when they were put in the PSR and citing the Surin-Prochner cases said that merely calling a victim unreliable is a rhetorical objection. That's not a denial, and it's not enough to prevent the court from considering it. And when Acevedo says that Santiago-Colón is distinguishable, he says that it's for the reason that other sex abuse victims testified at trial, but that's a, a faulty distinction because this court gave reasons that the information was permissibly reliable and the trial wasn't mentioned at all. So the, the same considerations in Santiago-Colón are present here. So the victim's account should be reliable. Really quickly, it's, there were not specific objections. You're well over your time. Okay. I, I'll. I have one more question for you, though, on the restitution issue. Was it determined that the mother here was a victim under the statute? In effect, because the government filed a motion saying that the mother's car was burned as part of the coercive relationship, and basically our position is it would elevate form over status to say that because the district court at one point said victim singular instead of victim plural, that that was a legal determination to confine restitution. And by the way, you'll notice in the briefs when the parties refer to the victim as SQR, that's what the district court was saying at the hearing when he said, we're referring to this minor, we're identifying her as SQR. In other words, he was saying, I'm using the acronym because she's a minor, not I'm using the acronym to identify her as the sole victim in this case. The counsel, the mother was not the victim of the criminal conduct at issue here. She may have been the victim of a different crime, but not of any of the crimes that are issued here. Isn't that correct? Respectfully, no, Judge Lopez. The count of conviction was coercion, and the coercion came from obtaining sexually explicit images, using them to have a hold over this victim and threatening her that if basically she didn't jump when he said jump, that he was going to ruin her life. And part of that coercive relationship was following through with a threat. He threatened that if you don't come see me within 48 hours, I'm going to burn your mother's car. And it was following through with that threat to burn the mother's car. So it's at the heart of Count Two, the count of conviction. Thank you. Thank you. Thank you, counsel. At this time, counsel for the appellant would reintroduce himself on the record. He has a two-minute rebuttal. Jose David Rodriguez, on behalf of Mr. Donald Cerezo-Sorio. Your Honors, I want to point out one of the more salient injustices in this case, how it was, how it developed. The government promised to help Mr. Acevedo in exchange of him waiving all his panoply of constitutional rights and admitting guilt, helping him to get 121 cents at the critical time at sentencing, facing a guideline range of 24 years, the government gave not even a single reason why the court should give 121 cents. The government, sorry, the government, the government broke its promise and it was not fair game for Mr. Acevedo. Lessor is very different. Lessor involved a recommendation to a guideline range where the government is free to argue for the high end and the defendant for the low end of the range. Here it was a very different agreement, it was a joint agreement to recommend the mandatory amendment. And the government has a unique perspective to inform the court about a case. They interview victims, they interview the agents, they have a different, a unique take on the seriousness of the offense and of dangerousness concerns and none of that was conveyed to the court here. The court was left without a reason from the government's representative to very downward 172 months. Lastly, regarding the restitution, I want to only mention, if I may finish this thought, that the government's motion requesting restitution for the mother's car, that was post sentencing and post finding by the court that the only victim for restitution purposes was SQR. And again, the very last thing, so our main point of restitution is there is no legal basis to post restitution for a car that did not belong to the victim. The underlying allegations about the arson of the case, I just want to mention, that is one of the problematic uncorroborated allegations that were presented to the court that the court relied for sentencing and Mr. Acevedo was never charged or even arrested for any of that. Thank you. Your time is up. Thank you, Your Honor. Thank you, Counsel. That concludes argument in this case.